# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL GARCIA, | 1:11-cv-01965-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Docket No. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I. BACKGROUND

Plaintiff Manuel Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3).

The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. FACTUAL BACKGROUND

Plaintiff was born in 1957, estimates that he has a 10th grade education, and worked as a construction worker, fruit harvest worker, forklift operator, mechanic helper, and stores laborer. (Administrative Record ("AR") 32-34, 47-48, 178, 186, 223, 227.) On August 28, 2009, Plaintiff filed an application for DIB, and on October 14, 2009, filed an application for SSI, alleging disability

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 10, 11.)

beginning on June 17, 2008, due to a heart condition and a replaced valve in the heart.[2] (AR 178-85, 186-93, 222.)

A.   **Relevant Medical Evidence**[3]

On June 13, 2008, Plaintiff was admitted to Bakersfield Heart Hospital for possible unstable angina with hypertension and electrocardiogram changes. (AR 271-328.) The Patient Admission Database form indicates that the languages spoken by Plaintiff are English and Spanish, and that no interpreter was needed. (AR 318.) Upon discharge, Plaintiff's daughter was presented with an English-language version of the Angiography Discharge Instructions, and Plaintiff signed a Spanish-language version. (AR 311-12.)

On March 5, 2009, Sarabjit Purewal, M.D., reported that Plaintiff was being admitted to Bakersfield Memorial Hospital for an aortic valve replacement, and that he was a "52-year-old Hispanic gentleman who speaks little English . . ." (AR 332-33.)

B.   **Administrative Reports**

1.   **Disability Report - Adult**

An unsigned and undated Adult Disability Report indicates that Plaintiff cannot speak and understand English and that his preferred language is Spanish. (AR 221-28.) The report also states that Plaintiff can read, understand, and write more than his name in English. (AR 221.) Plaintiff would write and complete reports in his job as a mechanic, but the language of those reports is not indicated. (AR 223.) The report further notes that Plaintiff has a 10th grade education. (AR 227.)

---

[2] The May 25, 2011, decision issued by the Commissioner indicates that Plaintiff applied for both DIB and SSI on August 27, 2009, but the applications indicate dates of August 28, 2009, and October 14, 2009, respectively. (*See* AR 14, 178, 186.)

[3] Plaintiff's brief raises arguments concerning the determination of Plaintiff's literacy and ability to communicate in English, and does not dispute any other findings made by the Commissioner, including medical findings. (Doc. 16, 8:9-11:5.) As such, the Court will only consider evidence related to Plaintiff's English literacy and communication skills, as Plaintiff has waived any other arguments. See *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (explaining that arguments not raised before the district court are generally waived).

### 2. Function Report - Adult

An unsigned and undated Adult Function Report states that Plaintiff can follow written and spoken instructions "well," but makes no indication as to any language requirement regarding those instructions. (AR 234.)

### 3. Medical/Vocational Decision Guides

A December 17, 2009, Medical/Vocational Analysis prepared by the Commissioner indicates that Plaintiff cannot read, write, or communicate in English, but makes no determination as to literacy. (AR 237.) However, a March 29, 2010, Medical/Vocational Analysis makes no determination as to Plaintiff's ability to read, write, and communicate in English. (AR 249.)

## C. Administrative Hearing

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 91-107.) On April 12, 2011, ALJ Sharon L. Madsen held a hearing in which Plaintiff, represented by counsel, and vocational expert ("VE") Jose L. Chaparoo testified. (AR 27-52.)

### 1. Plaintiff's Testimony

Plaintiff testified through an interpreter. (AR 29; *see also* AR 34.) When Plaintiff was asked if his educational level was at the 10th grade, he replied that he was "not sure if that's exactly correct" and indicated that he "studied up to the 6th grade in Mexico, and then [he] studied some classes here for English." (AR 33.) Plaintiff stated that he understood "[a] little bit" of English." (AR 34.) Plaintiff also indicated that he "always had problems or issues with [] English" at his job and, when he worked as a bowling alley mechanic, he had to work as the assistant because the mechanic was required to order the parts and Plaintiff "wasn't capable with [his] English" and "wouldn't be able to do it." (AR 37, 47.)

### 2. VE Testimony

The VE testified that Plaintiff's former jobs as a construction worker II and a pinsetter mechanic helper were heavy and unskilled, former jobs as fruit harvest worker and store laborer were medium and unskilled, and a former job as an industrial truck operator was medium and semi-skilled. (AR 47-48.) The ALJ asked whether a hypothetical person of the "same age, education,

language, and work background" as Plaintiff who could lift and carry 50 pounds occasionally and 25 pounds frequently, and who could stand or walk six hours but could not work around or climb ladders, ropes, scaffolds, or heights and who could not work around sharp instruments could perform Plaintiff's past work. (AR 48.) The ALJ testified that such a person could work as an industrial truck operator and a storage laborer, but could not perform any other of Plaintiff's past jobs. (AR 49.)

The ALJ presented a second hypothetical based on the same limitations but further limiting the person to only lifting 20 pounds occasionally and ten pounds frequently. (AR 49.) The VE testified that such a person could not perform any of Plaintiff's past work but could perform other light and unskilled jobs such as apple packing header, can and billing closing machine tender, and housekeeper/cleaner. (AR 49.)

In a third hypothetical, the ALJ used the same limitations as the second hypothetical and added that this person would need additional three to four breaks of 30 minutes per day. (AR 49.) The VE stated that such a person could not perform Plaintiff's past relevant work or any other work. (AR 50.)

Plaintiff's attorney asked the VE to consider a hypothetical person based on the factors presented in the ALJ's first hypothetical, but with added impairment to a moderate level in concentration, persistence, and pace, with moderate being definite as one-third of a workday. (AR 50.) The VE stated that person could not perform any work. Plaintiff's attorney presented another hypothetical based on the ALJ's second hypothetical, but with an additional impairment regarding a moderate level of concentration, persistence, and pace; the VE testified that such a person could not perform Plaintiff's past work or any other work. (AR 50.)

**D.   ALJ's Decision**

On May 25, 2011, the ALJ issued a decision finding Plaintiff not disabled since June 17, 2008, the alleged disability onset date. (AR 8-22.) Specifically, the ALJ found that (1) Plaintiff met the insured status requirements of the Act through December 31, 2013; (2) Plaintiff had not engaged in substantial gainful activity since June 17, 2008, the alleged disability onset date; (3) Plaintiff had severe impairments of aortic valve stenosis, status-post aortic valve replacement, hypertension, and

anticoagulation therapy; (4) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the residual functional capacity ("RFC")[4] to lift and/or carry 20 pounds occasionally and 10 pounds frequently, and to sit, stand and/or walk six hours in an eight-hour day, but could not climb ladders, ropes, or scaffolds, and could not work at unprotected heights or around sharp objects; (6) Plaintiff was unable to perform past relevant work; (7) Plaintiff was defined as an individual closely approaching advanced age on the alleged disability onset date; (8) Plaintiff had a limited education and was able to communicate in English; (9) the transferability of job skills was not material to the disability determination because Plaintiff was "not disabled" under the Medical-Vocational Rules whether or not Plaintiff had transferrable job skills; (10) there were jobs that exist in significant numbers in the national economy that Plaintiff could perform; and (11) Plaintiff had not been under a disability as defined in the Social Security Act since June 17, 2008, through the date of the decision. (AR 16-21.)

Plaintiff sought review of this decision before the Appeals Council. On September 23, 2011, the Appeals Council denied review. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**E.     Plaintiff's Contentions on Appeal**

On November 21, 2011, Plaintiff filed the current complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff contends that the ALJ erred by failing to make an adequate finding of Plaintiff's literacy and ability to communicate in English, and thus the Court should reverse and remand the decision. (Doc. 16.)

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

1   The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that the ALJ failed to meet the Step Five burden of showing that there are jobs that Plaintiff can perform in light of his age, education, work experience, and RFC, because a person who has an RFC for light exertion, is closely approaching advanced age, has a limited education, and is unable to either communicate in English or is illiterate in English, is presumed to be disabled. (Doc. 16, 8:15-26 (citing the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.09.) Plaintiff asserts that the ALJ is required to find that a claimant is both literate and able to communicate in English. (Doc. 16, 9:3-8.) Plaintiff contends that the ALJ failed to find Plaintiff literate in English and that the finding that Plaintiff could communicate in English was not supported. (Doc. 16, 9:9-10:5.) As such, the ALJ's "naked conclusion" of literacy and ability to communicate in English does not constitute a sufficient finding on the record. (Doc. 18, 3:16-7:16.)

1  Defendant contends that the ALJ properly considered Plaintiff's education, which included
2  his ability to communicate in English, and that the ALJ's decision was supported by substantial
3  evidence and should be upheld. (Doc. 17, 5:14-8:24.)

**A.  Legal Standard**

The Commissioner considers education as a vocational factor. 20 C.F.R. §§ 404.1564, 416.964. The categories of education that are considered include literacy and the ability to communicate in English. *Id*. at 404.1564(b)(1), (b)(5); 416.964(b)(1), (b)(5). A distinction exists between an assessment of literacy and an assessment of the ability to communicate in English, and an ALJ must consider both in determining whether a claimant can perform work pursuant to the regulations. *Id*.; *see also Calderon v. Astrue*, NO. 1:08-CV-01015 GSA, 2009 WL 3790008, at *9 (E.D. Cal. Nov. 10, 2009).

Illiteracy is defined as "the inability to read or write. [The Commissioner] consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1).

The Commissioner further considers a claimant's ability to communicate in English:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

*Id*. at 404.1564(b)(5); 416.964(b)(5).

**B.  The ALJ's Consideration of Plaintiff's Language Abilities**

An unsigned and undated Adult Disability Report indicates that Plaintiff cannot speak and understand English and that his preferred language is Spanish. (AR 221-28.) The report also states, however, that Plaintiff can read, understand, and write more than his name in English. (AR 221.) An unsigned and undated Adult Function Report states that Plaintiff can follow written and spoken instructions "well," but does not indicate in what language. (AR 234.) A December 17, 2009, Medical/Vocational Analysis prepared by the Commissioner indicates that Plaintiff cannot read,

write, or communicate in English, and makes no determination as to literacy. (AR 237.) However, a March 29, 2010, Medical/Vocational Analysis makes no determination as to Plaintiff's ability to read, write, and communicate in English. (AR 249.)

At the administrative hearing, Plaintiff testified through an interpreter and indicated that he only understands "a little bit" of English. (AR 29, 34.) Although the undated Adult Disability Report indicates that Plaintiff has a 10th grade education, at the hearing Plaintiff stated that he "studied up to the 6th grade in Mexico, and then [he] studied some classes here for English," but did not state how long he studied English in the United States. (AR 33, 227.) Further, Plaintiff indicated that he "always had problems or issues with [] English" at his jobs and, when he worked as a bowling alley mechanic, he had to work as an assistant mechanic because the mechanic was required to order parts and Plaintiff "wasn't capable with [his] English" and "wouldn't be able to do it." (AR 37, 47.) The hypotheticals posed by the ALJ to the VE assume a "person of the same age, education, language, and work background as the Claimant," but the ALJ does not explain what specific language skills the VE should consider. (AR 48.)

The ALJ's decision makes very limited findings regarding Plaintiff's English literacy and communication skills. The ALJ considered the functional area of Plaintiff's activities in daily living and noted that "[t]he claimant testified he has difficulty reading and sadness." (AR 17.) The ALJ determined that "[t]he claimant has a limited education and is able to communicate in English," but provided no explanation for this finding. (AR 20.) There is no other information regarding Plaintiff's literacy and ability to communicate in English in the decision. (*See* AR 14-22.)

Plaintiff is an individual closely approaching advanced age. (AR 20.) The Grids define someone as disabled if he is closely approaching advanced age and is illiterate or unable to communicate in English, with no work experience or unskilled. 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.09. However, someone closely approaching advanced age who is either unskilled or has no work experience, or is skilled or semi-skilled with nontransferable skills, is defined as not disabled if he has an education that is "limited or less" than a high school diploma, but he is "at least literate and able to communicate in English." *Id.* at Rules 202.10, 202.11. As such, consideration of a claimant's literacy and ability to communicate in English is necessary in determining disability.

At the administrative hearing, the VE testified that Plaintiff's former jobs were unskilled with the exception of industrial truck operator, which was semi-skilled, and that there was no transferability of skills. (AR 47-48.) The ALJ determined that Plaintiff was unable to perform any past relevant work, and made no determination regarding the transferability of Plaintiff's job skills. The ALJ's decision stated that "[t]he transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules [(the Grids)] as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills." (AR 21.) The Grids, however, only support a finding of "not disabled" if a claimant is "at least literate and able to communicate in English." 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.10. For someone who is "illiterate or unable to communicate in English" and who had no or unskilled previous work experience, the Grids indicate that the claimant is "disabled." *Id*. at Rule 202.09.

As noted, the VE testified that most of Plaintiff's prior work was unskilled, with only one semi-skilled job, and the ALJ's decision does not identify any transferrable job skills. As the Ninth Circuit noted, "[t]he grid rules are ambiguous with regard to the treatment of skilled or semi-skilled work histories with no transferable skills. We hold that, as a matter of interpretation, in applying the grid rules the Commissioner must treat a skilled or semi-skilled work history with no transferable skills as equivalent to an unskilled work history." *Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000). As such, Plaintiff's work experience should be interpreted as unskilled.

Accordingly, the determination of Plaintiff's literacy and English communication abilities is key to establishing a finding of "not disabled." The ALJ's decision made no finding that Plaintiff was literate, and failed to provide any explanation of the finding that Plaintiff had a limited education and could communicate in English. (*See* AR 20.) Therefore, the ALJ's failure to make a finding as to literacy and to provide reasons for the finding made as to English communication abilities warrant remand for determination of these issues. *See Silveira*, 204 F.3d at 1261-62 ("The Commissioner bears the burden of establishing that [the plaintiff] is literate. The ALJ made no express finding that [the plaintiff] was literate in English, and there is insufficient evidence in the record to determine whether or not he is literate in English. Therefore, we remand [the plaintiff's] case for a finding as to this issue.") (footnotes omitted); *see also Calderon*, 2009 WL 3790008, at *9-*10 (finding that

10

the ALJ did not explain "what 'a limited ability' to read and write in English meant. Th[e] evidence is insufficient to support a finding that Plaintiff is literate. A vague response of '[a] little bit' in response to whether or not a claimant can read or write English is insufficient to establish that Plaintiff can read or write a simple message in the English language") (footnote omitted).

The Commissioner contends that the ALJ's decision should be upheld and asserts that there was substantial evidence to support the ALJ's finding regarding Plaintiff's English language abilities. The Commissioner offers reasons in support of the ALJ's decision, such as Plaintiff submitting a statement with his application that was handwritten in English, Plaintiff purportedly indicating that he followed spoken instruction "well" and that he could read and understand English and write more than his name in English, Plaintiff's work history in the United States, and the fact that Plaintiff is now a United States citizen and thus, "presumably [was] able to pass the written entrance exam." (Doc. 17, 5:26-6:8.) The Commissioner relies on *Ochoa v. Astrue*, No. EDCV 08-1858 CW, 2009 WL 3756656, at *4 (C.D. Cal. Nov. 6, 2009), for the contention that the ALJ's finding regarding literacy and English communication skills should be upheld when supported by substantial evidence. (Doc. 17, 8:11-15.)

In *Ochoa*, "[t]he ALJ provided specific, cogent reasons for disregarding Plaintiff's claim," and these reasons were stated in the ALJ's decision. *Ochoa*, 2009 WL 3756656, at *4. Here, however, none of the reasons offered by the Commissioner to support the ALJ's findings was articulated in the ALJ's decision. (*See* AR 14-22.) The ALJ made no finding concerning Plaintiff's literacy and provided no explanation to support the finding regarding Plaintiff's English communication skills. (*See* AR 14-22.)

While the Court can draw reasonable inferences that exist from the ALJ's opinion, *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989), the Court cannot consider the Commissioner's post hoc rationalizations. The Ninth Circuit has repeatedly emphasized that the "bedrock principle of administrative law" is that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts."). An

agency's decision cannot be affirmed on the ground that the agency did not invoke in making its decision. *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001).[5]

C.     **Remand is Appropriate to Address the Deficiencies in the ALJ's Decision**

Remand is appropriate when, like here, a decision does not adequately explain how a conclusion was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Barbato v. Comm'r of Soc. Sec.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (citations omitted).

### VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Manuel Garcia and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **January 29, 2013**               /s/ Sheila K. Oberto
                                    UNITED STATES MAGISTRATE JUDGE

---

[5] Defendant's argument "[t]hat this issue was not raised at Plaintiff's hearing indicates that there was no 'apparent' conflict" lacks merit. (Doc. 17, 7:26-27.) The Supreme Court has held "that a plaintiff challenging a denial of benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates." *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (citing *Sims v. Apfel*, 530 U.S. 103 (2000)). The Court also notes that Plaintiff had different counsel at the administrative hearing. (*See* AR 27.)